# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARMOUR LYLE JOLLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 22-2580 (CKK) |
| | : | |
| UNKNOWN NAMED BOP DIRECTORS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION[1]

Armour Lyle Jolley ("plaintiff") brings this civil action against officials of the Federal Bureau of Prisons ("BOP"), in their individual capacities under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and in their official capacities, alleging violations of rights protected by the First, Fifth, and Eighth Amendments to the United States Constitution.  This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 17), plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 24), Plaintiff's Motion for Discovery Hearing (ECF No. 36), and Plaintiff's Amended Motion for

---

[1] The Court's consideration focused on the following documents and their attachments:
- Complaint for Violation of Civil Rights, ECF No. 1 ("Compl.")
- Defendants' Motion to Dismiss and Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, ECF No. 17 ("Defs.' Mem.")
- Motion for Leave to File an Amended Complaint, ECF No. 24 ("Mot. Am. Compl."), and proposed Amended Complaint, ECF No. 23-1 ("Am. Compl.")
- Plaintiff's Opposition to Defendants' Motion to Dismiss and Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, ECF No. 29 ("Pl.'s Opp'n")
- Defendants' Reply in Further Support of their Motion to Dismiss and Memorandum in Opposition to Plaintiff's Motion for Leave to File Amended Complaint, ECF Nos. 31-32 ("Reply")
- Plaintiff's Motion for Discovery Hearing, ECF No. 36.
- Plaintiff's Amended Motion for Discovery/Evidentiary Hearing, ECF No. 38
- Defendants' Response to Plaintiff's Third Motion for Hearing, ECF No. 39

Discovery/Evidentiary Hearing (ECF No. 38).  For the reasons discussed below, the Court

GRANTS plaintiff leave to amend his complaint, DENIES plaintiff's motions for discovery

hearing, and GRANTS defendants' motion to dismiss.[2]

# I. LEGAL STANDARDS

## A. Amendment of the Complaint and Rule 15(a)

The decision to grant or deny leave to amend a complaint "is committed to a district

court's discretion."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  "The court

should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "in the absence of

undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure

deficiencies, or futility," *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999)

(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The Court "may deny a motion to amend a

complaint as futile . . . if the proposed claim would not survive a motion to dismiss."  *James*

*Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *Foman*, 371 U.S. at 181–

82).  Consequently, "review for futility 'is, for practical purposes, identical to review of a Rule

12(b)(6)' motion to dismiss."  *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 57

(D.D.C. 2012) (quoting *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215–16 (D.C.

Cir. 2010)).

## B. Personal Jurisdiction and Rule 12(b)(2)

"A plaintiff bears the burden of establishing a court's personal jurisdiction over a

defendant who moves to dismiss the claims against him under [Federal] Rule [of Civil

---

[2]   For purposes of this Memorandum Opinion, the Court presumes without deciding that the individual defendants have been served with process and that venue in this district is proper. Thus, the Court declines to address defendants' arguments for dismissal under Rule 12(b)(5) for improper service, *see* Defs.' Mem. at 22-23, and under 12(b)(3) for improper venue, *see* Defs.' Mem. at 24.

Procedure] 12(b)(2)." *West v. Holder*, 60 F. Supp. 3d 190, 193 (D.D.C. 2014) (citing *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)), *aff'd sub nom. West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017); *Hampton v. Comey*, No. 1:14-cv-1607 (ABJ), 2016 WL 471277, at *6 (D.D.C. Feb. 8, 2016) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)), *aff'd*, No. 16-5058, 2016 WL 6238558 (D.C. Cir. Sept. 8, 2016).  A plaintiff survives a Rule 12(b)(2) motion if he "'make[s] a *prima facie* showing of the pertinent jurisdictional facts.'"  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-57 (D.C. Cir. 2017) (quoting *First Chicago. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)).  The *prima facie* showing requires specific factual allegations connecting each defendant to this forum.  *See First Chicago Int'l*, 836 F.2d at 1378.  "Conclusory statements" and "bare allegation[s]" will not suffice.  *Id.* at 1378–79. "Unlike with a motion to dismiss under Rule 12(b)(6), the Court 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'"  *Doe v. United States*, 797 F. Supp. 2d 78, 81 (D.D.C. 2011) (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).  "In determining whether [a basis for personal jurisdiction] exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff."  *Crane*, 894 F.2d at 456 (citation omitted).

### C. Failure to State a Claim and Rule 12(b)(6)

A complaint must contain "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a), and a motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In order to survive a Rule 12(b)(6) motion to dismiss, a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009); accord *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the

Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet

that a court must accept as true all of the allegations contained in a [petition] is inapplicable to

legal conclusions."  *Id*. at 678.  "Second, only a complaint that states a plausible claim for relief

survives a motion to dismiss."  *Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw

the reasonable inference that [respondent] is liable for the misconduct alleged."  *Id*. at 678. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a [respondent] has acted unlawfully."  *Id*.  A pleading must offer more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id*.

(quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Id*.

In ruling on a motion to dismiss for failure to state a claim, ordinarily the Court may

consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated

by reference in the complaint and matters about which the Court may take judicial notice."

*Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citing *EEOC v. St. Francis

Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).  But where the action is brought

by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before

dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing

*Richardson*, 193 F.3d at 548), because such complaints are held "to less stringent standards than

formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## II.  PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Plaintiff filed his complaint on August 24, 2022, and defendants filed their motion to

dismiss on March 6, 2023. Before defendants' motion had been briefed fully, on April 7, 2023, plaintiff filed a motion to amend the complaint to "clarif[y] and correct[] . . . critical defects" to "aid in . . . presenting the merits" of his claims. Mot. Am. Compl. at 1. In addition, plaintiff identified two defendants, Colette Peters and Michael Carvajal, *see id*., to whom he referred in the original complaint as "Unknown Named BOP Director or Directors," Compl. at 4. Lastly, plaintiff fleshed out the First Amendment retaliation claim, *see generally* Am. Compl. ¶¶ 28-31, set forth in his opposition to defendants' motion to dismiss, *see generally* Pl.'s Opp'n at 36-39. The proposed amended complaint otherwise does not differ substantially from the original complaint. Defendants oppose plaintiff's motion on the ground that amendment is futile, *see generally* Reply at 11-15, and address the First Amendment claim directly, *see id*. at 10, 12-13.

Even though the amended complaint suffers the same defects as the original complaint, the Court grants plaintiff leave to file it, and derives its understanding of plaintiff's factual allegations from both pleadings.

## III. PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff's claims arise from his validation as a member of the Aryan Brotherhood, *see* Compl. at 6; Am. Compl. ¶ 21, resulting in his placement at USP Florence ADMAX ("ADX"), an administrative security federal penitentiary, *see* Am. Comp. ¶ 21.

In early 2017, while plaintiff was designated to the United States Penitentiary in Victorville, California ("USP Victorville"), an agent of the Federal Bureau of Investigation, "accompanied by SIS Tech Toronas," visited plaintiff and asked to interview him about "a 2013 homicide case connected to the Aryan Brotherhood." Am. Compl. ¶ 22.[3] Plaintiff "declined to

---

[3]   The Court presumes that "SIS Tech" means the position of Special Investigative Services Technician.

be interviewed." Compl. at 7. On March 23, 2017, plaintiff did meet "with an attorney representing the [person] accused of this homicide." Am. Compl. ¶ 23; *see* Compl. at 7. According to plaintiff, "in retaliation [for] exercising [his] 1st Amendment right by speaking with the defense attorney and not the FBI [agent] and SIS staff, SIS Tech [Blanco] began taking steps to lay a path to have [plaintiff] classified by the BOP as a member of the Aryan Brotherhood," Compl. at 7, "as instructed by a superior at the BOP Central Office," Am. Compl. ¶ 28.

"Shortly after" plaintiff's meeting with defense counsel, Blanco had plaintiff "removed . . . from his cell during an institutional lockdown count," *id.* ¶ 24, "stripped and photographed in search of gang tattoos," *id.*, and "questioned . . . about being a gang member," *id.* Plaintiff denied having gang tattoos and gang membership. *See id.* "In 2017 or 2018, Blanco discovered a cup depicting what is thought to be gang symbolism in a cell" occupied by another inmate. *Id.* ¶ 26. "Blanco photographed this cup [and] entered this photograph into [plaintiff's] record," to be used later "by a superior of Blanco's . . . at BOP Central Office for the purpose of gang validation." *Id.* Plaintiff attributed to Blanco "an evil motive or intent," Compl. at 7, and by inserting the photograph Blanco "falsified" plaintiff's prison records, *id.* Plaintiff posited that, had he actually "possessed[ed] such gang paraphe[r]nalia indicating gang affiliation," there would have been a disciplinary incident report, yet plaintiff was not disciplined. *Id.*; *see* Am. Compl ¶ 27.

In late 2018, plaintiff was designated to the United States Penitentiary in Beaumont, Texas ("USP Beaumont"), where he "was housed in the same unit as two Aryan Brotherhood members." Am. Compl. ¶ 33. Johnny Biggs, an inmate at USP Victorville and member of a group called the Aryan Circle, allegedly sought plaintiff's help "to mediate a conflict between the

[Aryan Circle] and [the Aryan Brotherhood]" because plaintiff was "on friendly terms with members of both groups."  *Id*. ¶ 34.  SIS Tech Nylen was aware of this situation, and allegedly encouraged plaintiff to "assist in the mediation process."  *Id*. ¶ 35.  Plaintiff expressed to Nylen his concern that "involvements with any gang mediations" would be considered participation in "gang activities."  *Id*. ¶ 36.  On Nylen's alleged assurance "that there was no such danger," as Nylen "was aware that [plaintiff] was not a gang member, plaintiff "agreed to help with these mediations."  *Id*.

Nylen "facilitated these mediations in conjunction with officials located at the BOP Central Office."  *Id*. ¶ 37.  Beginning on December 6, 2018, plaintiff was allowed to communicate "via the inmate email system between prisons through a third party," and all communications "were monitored and approved by Nylen and officials located at the BOP Central Office."  *Id*.  Eventually "hostilities between the two groups were resolved."  Compl. at 9.

On October 7, 2020, Nylen informed plaintiff that, as of August 5, 2020, plaintiff "had . . . been validated a gang member by an unknown named official located at the BOP Central Office."  Am. Compl. ¶ 38; *see id*. ¶ 42.  Only then did plaintiff "discover[] that his prison record [allegedly] had been falsified by . . . Blanco in 2017 or 2018."  *Id*. ¶ 38.  Plaintiff had no prior notice of or hearing prior to the gang validation, *id*. ¶ 42; *see* Compl. at 10-11.

BOP considers the Aryan Brotherhood a "disruptive group" and plaintiff's membership in the group prompted his transfer.  On October 7, 2020, plaintiff left USP Beaumont and arrived at the Federal Correctional Complex in Coleman, Florida ("FCC Coleman") on November 4, 2020.  Compl. at 10.  There, in January 2021, while designated to the United States Penitentiary there ("USP Coleman"), plaintiff "began the Administrative Remedy process."  *Id*.  Warden Antonelli

concluded that plaintiff met the criteria for gang validation and rejected plaintiff's request for its removal.  *See id*. at 14.  The grievance process concluded on July 12, 2021, when BOP's National Inmate Appeals Administrator rejected plaintiff's "request [for] removal of the Security Threat Group assignment," *id*., Ex. A (ECF No. 1-1 at 1).  The allegedly erroneous gang validation was "a huge contributor to [his] ADX placement."  Am. Compl. ¶ 44.

An investigation involving plaintiff and "seven or eight Aryan Brotherhood members . . . in the general population" at other BOP facilities took place and concluded on April 7, 2021. Compl. at 13.  According to plaintiff, he "was included in this investigation" only because defendants erroneously deemed him an Aryan Brotherhood member.  *Id*.; *see* Pl.'s Opp'n at 7. On April 12, 2021, plaintiff was removed from the general population and placed in a special housing unit at USP Coleman.  Compl. at 13.  It was recommended that all subjects of the investigation be transferred to ADX.  *See id*.

The ADX placement process included a mental health evaluation.  *See* Am. Compl. ¶ 47. "[A]n ADX Referral Mental Health Evaluation [was] ordered by the BOP Central Office," which Dr. Ballesteros conducted on June 8, 2021.  *Id*.; *see id*., Ex. B (ECF No. 24-1 at 22-24). According to plaintiff, Dr. Ballesteros' report made "multiple, severely damaging false claims." *Id*. ¶ 48.  For example, the report stated that plaintiff "has committed murders, ordered murders and been involved with multiple assaults," *id*. ¶ 49, yet, according to plaintiff, his "prison record reflects . . . violence . . . of two minor fights," *id*. ¶ 50, neither of which involved a weapon, *see id*.  Even though plaintiff had "been included in violent investigations, . . . none resulted in disciplinary actions or criminal charges."  Compl. at 14.  Thus, Dr. Ballesteros allegedly falsified plaintiff's record, *see* Am. Compl. ¶ 52, and her report has become "a permanant [sic] part of [plaintiff's] prison record," *id*. ¶ 48.

On August 14, 2021, BOP staff delivered to plaintiff a Notice of Hearing on Referral for Transfer to ADX Florence General Population.  *See generally id.*, Ex. C (ECF No. 24-1 at 26-28).  The stated basis for plaintiff's referral was:

> On April 7, 2021, an SIS investigation was completed and it was determined that [plaintiff is] an "Aryan Brotherhood" Member, and [he was] a willing participant who possessed direct knowledge of a planned assault, and assisted in the facilitation of a potential agency wide racial war.  Due to inmate JOLLEY's knowledge of the planned assault, and [his] propensity for future disruptive acts, [he had] rendered [himself] a management concern.  [He] show[ed he] pose[s] a significant threat to others which disrupts the orderly running of a main line institution.

*Id.*, Ex. C (ECF No. 24-1 at 27).  Plaintiff attended the hearing on August 18, 2021, *see* Compl. at 15, and his placement at ADX in general population was approved on August 19, 2021, Am. Compl. ¶ 68.[4]  On September 9, 2021, *id.* ¶ 69, plaintiff received the ADX General Population Hearing Administrator's Report, *see generally id.*, Ex. D (ECF No. 24-1 at 30-34), which advised him of his right to appeal "through BOP's Administrative Remedy Program, using a Regional Administrative Remedy Appeal (BP-10) form . . . sent to the [Designation and Sentence Computation Center ('DSCC') at BOP's] Grand Prairie Complex, U.S. Armed Forces Reserve Complex, 346 Marine Forces Drive, Grand Prairie, Texas 75051," *id.*, Ex. D (ECF No. 24-1 at 34).

Plaintiff sent an administrative remedy to DSCC as instructed.  *Id.* ¶ 70.  DSCC rejected the appeal on the ground that plaintiff submitted it "to the wrong level," and plaintiff instead should have sent the appeal to "the institution, regional office, or central office," *id.*, Ex. E (ECF No. 24-1 at 37), contrary to the instructions on the Hearing Administrator's Report.  Plaintiff

---

[4]   At that time, plaintiff was "a HIGH security level inmate with IN custody," and had "a Security Threat Group assignment of Aryan Brotherhood Member, and Escape Risk."  Am. Compl., Ex. D (ECF No. 24-1 at 2).

next sent an appeal to BOP's Central Office, *id.* ¶ 72, and this appeal, too, was rejected for failure to submit it to the proper office, that is, to DSCC, *see id.*, Ex. F (ECF No. 24-1 at 43).

Plaintiff attributes his placement at ADX, where he allegedly will remain indefinitely, to the Aryan Brotherhood gang validation. *See id.* ¶¶ 89, 92. ADX, he alleges, is "designed to house recalcitrant inmates," *id.* ¶ 92, and provides "the most restrictive form of incarceration, established to keep the most pedetory [sic] and dangerous prisoners from the rest of the prison population," *id.* ¶ 92, where "almost every aspect of an inmate[']s life is controlled and monitored," *id.* ¶ 93. He does not experience the relative freedom offered to inmates at less secure facilities, who "may engage in group programs, religious gatherings and hold jobs," *id.* ¶ 97, and "share meals in a common eating area," *id.* ¶ 98.

At ADX, plaintiff alleges, he "has lost more than 95 percent of out of cell time [and] spends every day in his 75 square foot cell." *Id.* ¶ 94. He "is . . . handcuffed whenever removed from his cell," *id.* ¶ 95, and has only limited time for exercise either "in a small outdoor cage or indoor space," *id.* Plaintiff "is . . . allowed only . . . four 15 minute phone calls on his assigned days" each month, *id.* ¶ 96, and is denied email access, *id.* At ADX, plaintiff "is . . . deprived of most human contact," and he must eat meals alone in his cell. *Id.* ¶ 98. Plaintiff is allowed only "non-contact visits through glass window and communicates with his visitors via telephone," *id.* ¶ 99, and restrictions in communication with family members cause his relationships to suffer and worsen over time, *see* Am. Compl. ¶¶ 100-01. In addition, plaintiff claims to have been labeled "a racist and a disruptive group member" whose chances "for a possible future sentence reduction or clemency" are negatively affected. Compl. at 12. Designation to ADX allegedly "multiplies the extreme hardship" by rendering him "a target to any enemy of the Aryan Brotherhood." *Id.* The conditions of confinement at ADX cause plaintiff "emotional and mental

10

distress."  Am. Compl. ¶ 101; *see* Pl.'s Opp'n at 49 (alleging "phychological [sic] harms resulting from isolation in solitary confinement"), 50 (alleging emotional, psychological and physical harms . . . and deprivations").

Plaintiff demands declaratory judgment, *see* Am. Compl. ¶ 5, and injunctive relief ordering defendants to remove the wrongful gang validation and to expunge falsifications entered into plaintiff's prison record by defendants Blanco and Ballesteros, *see id*. ¶¶ 5, 51, 105. In addition, plaintiff demands monetary damages of an unspecified amount.  *See* Pl.'s Opp'n at 16-17.

## IV.  CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

### A.  Personal Jurisdiction Over Blanco, Nylen, Antonelli and Ballesteros

Among the defendants are SIS Technicians Blanco (USP Victorville) and Nylen (USP Beaumont), Warden Antonelli (USP Coleman), and Dr. Ballesteros (USP Coleman).  These defendants move to dismiss the complaint under Rule 12(b)(2) on the ground that the Court lacks personal jurisdiction over them.  *See generally* Defs.' Mem. at 20-22.

In the circumstances of this case, the Court may exercise jurisdiction over an individual in two ways.  First, a District of Columbia court "may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief."  D.C. Code § 13-422.  Plaintiff acknowledges that these defendants do not reside in the District of Columbia, *see* Pl.'s Opp'n at 28, and this general jurisdiction provision does not apply.

Second, the Court may exercise personal jurisdiction over a non-resident if two criteria are met: the District of Columbia's long-arm statute applies and the Court finds that its exercise "of jurisdiction satisfies the constitutional requirements of due process."  *GTE New Media Servs.*

*Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)).  Due process concerns are addressed if a plaintiff shows "minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).  "It is 'essential in each case that there be some act by which the defendant purposefully avails [himself or herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Hampton*, 2016 WL 471277, at *7 (quoting *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 127 (D.C. Cir. 1999)) (additional citation omitted). Minimum contacts must arise from "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  In other words, a "defendant's conduct and connection with the forum State are such that [he] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Plaintiff argues that this Court may exercise jurisdiction under the District's long-arm statute, *see* Pl.'s Opp'n at 28, which in relevant part provides:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
> (1)  transacting any business in the District of Columbia;
> (2)  contracting to supply services in the District of Columbia;
> (3)  causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
> (4)  causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does

12

> or solicits business, engages in any other persistent course of
> conduct, or derives substantial revenue from goods used or
> consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13-423(a).

According to plaintiff, these defendants "regularly perform[] in and with the BOP Central

Office locate[d] in the District of Columbia," and although they "were assigned to BOP locations

[outside of this] forum, their purposeful activities flowed through the BOP Central Office here."

Pl.'s Opp'n at 28.  For example, he asserts that Blanco's and Nylen's "job functions include

continuous and systematic activities directed to contacts located at the Central Office," such as

Blanco's "initiating a gang validation investigation" at the behest of an unidentified official at

the Central Office and activities involving Intelligence Officers at the Central Office.  *Id.* at 29.

He makes a similar argument with respect to Antonelli, *see id.* at 29-30, even if his contacts with

the Central Office "may or may not be related" to plaintiff's case, *id.* at 29, and Ballesteros,

whom the Central Office assigned to conduct plaintiff's evaluation during the ADX placement

process, *see id.* at 30.  Plaintiff asserts that these defendants have "no reasonable expectations not

to be exposed to . . . personal jurisdiction as a result of [their] acts or omissions here."  *Id.* at 30;

*see id.* at 29.  In plaintiff's view, these defendants not only took action in the District of

Columbia, *see id.* at 31, but also maintained "substantial ties," *id.*, to the District by virtue of

their connection to BOP.  Plaintiff's arguments are contrary to established law.

"A person's status as a government employee who works for an agency headquartered in

Washington, D.C. . . . does not constitute contacts sufficient to subject him to this Court's

personal jurisdiction."  *Scurlock v. Lappin*, 870 F. Supp. 2d 116, 121 (D.D.C. 2012), *aff'd sub*

*nom. Scurlock v. Samuels*, No. 12-5245, 2014 WL 590559 (D.C. Cir. Feb. 10, 2014) (per

curiam); *see Ali v. Fed. Bureau of Prisons*, No. 17-cv-2293, 2018 WL 10582157, at *1 (D.D.C.

Jan. 22, 2018) (concluding that "plaintiff cannot rely on [defendant's] status as an employee of the BOP, the headquarters office of which is in the District of Columbia, as a basis for personal jurisdiction"); *Scinto v. Fed. Bureau of Prisons*, 608 F. Supp. 2d 4, 7 (D.D.C. 2009) (concluding plaintiff's allegations that defendants were following and enforcing regulations originating from BOP's Washington, D.C. headquarters "are insufficient to establish personal jurisdiction over non-resident BOP employees"), *aff'd*, 352 F. App'x 448 (D.C. Cir. 2009) (per curiam); *see also Pinson v. U.S. Dep't of Justice*, 975 F. Supp. 2d 20, 29 (D.D.C. 2013) (denying leave to amend complaint "to pursue monetary damages against . . . individual defendants for all alleged constitutional torts pursuant to *Bivens*" because plaintiff "has not demonstrated that this Court maintains personal jurisdiction over these defendants who appear to be located in Colorado").

The Court therefore concludes that it lacks personal jurisdiction over defendants Blanco, Nylen, Antonelli and Ballesteros.[5]

### B. First Amendment Retaliation Claim Under *Bivens*

The First Amendment claim arises from SIS Tech Blanco's alleged retaliation against plaintiff for having chosen to speak with the attorney representing the person accused of murder and having refused an interview with an FBI agent.  *See* Am. Compl. ¶ 28; Pl.'s Opp'n at 40.  He attributes to Blanco an "evil intent," Am. Compl. ¶ 30, prompting Blanco, "as instructed by a superior at the BOP Central Office," *id*. ¶ 28, to initiate a process culminating in the validation of plaintiff as a gang member.  To this end, plaintiff alleges, Blanco "falsified" prison records, *id*., making it appear as if plaintiff were a member of the Aryan Brotherhood.

---

[5]  It appears that the arguments put forth by defendants Blanco, Nylen, Antonelli and Ballesteros regarding personal jurisdiction apply equally to the "Unknown Named BOP Administrative Remedy Coordinator . . . at the DSCC in Grand Prairie, Texas."  Am. Compl. ¶ 11.  Thus, the Court concludes that it lacks personal jurisdiction over this unnamed defendant.

In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  Under *Bivens*, "it is damages or nothing." *Davis v. Passman*, 442 U.S. 228, 245 (1979) (citation and internal quotation marks omitted).  But a *Bivens* remedy is recognized only in three contexts: (1) an action under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations," *Bivens*, 403 U.S. at 397; (2) a Fifth Amendment sex discrimination claim brought by a former congressional staffer, *see Davis*, 442 U.S. at 248-49; and (3) an Eighth Amendment claim for inadequate medical treatment provided to a federal prisoner, *see Carlson v. Green*, 446 U.S. 14 (1980).  In any other context, "recognizing a *Bivens* cause of action is 'a disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 483 (2022) (quoting *Ziglar v. Abbasi*, 582 U. S. 120, 133 (2017)).

"There is no *Bivens* action for First Amendment retaliation, and the Supreme Court has never recognized the availability of *Bivens* claims for First Amendment violations." *Jones v. U.S. Secret Serv.*, __ F. Supp. 3d __, __, 2023 WL 8634586, at *5 (D.D.C. Nov. 10, 2023) (citations and internal quotation marks omitted), *appeal docketed*, No. 23-5288 (D.C. Cir. Dec. 7, 2023); *see Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 30 (D.D.C. 2021) (dismissing protester plaintiffs' First Amendment claims under *Bivens*, noting that such claims "arise[] in a new context because the Supreme Court has never extended *Bivens* to a claim brought under the First Amendment"), *aff'd sub nom. Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023); *see also Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 685–86 (5th Cir. 2021) ("declin[ing] to extend *Bivens* to include First Amendment retaliation claims against prison officials, joining our sister courts that have recently considered

the matter"); *Shumpert v. Torres*, No. 21-cv-03228-LTB-GPG, 2022 WL 3700150, at *1 (D.

Colo. Aug. 11, 2022) (dismissing with prejudice "request for monetary relief pursuant to *Bivens* .

. . based on the Defendant's alleged violation of [plaintiff's] First Amendment rights"), *appeal*

*dismissed*, No. 22-1262, 2023 WL 5527589 (10th Cir. June 30, 2023).

Even if the Court could exercise personal jurisdiction over defendants Blanco, Nylen,

Antonelli and Ballesteros, there is no cognizable *Bivens* claim against them for an alleged

violation of plaintiff's First Amendment rights.

### C. Qualified Immunity for Blanco, Nylen, Antonelli and Ballesteros

Insofar as plaintiff demands compensatory damages, *see* Pl.'s Opp'n at 15-16, defendants

argue that qualified immunity protects them from plaintiff's Fifth Amendment claims under

*Bivens*, *see* Defs.' Mem. at 17-19.[6]

"[G]overnment officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982) (citations omitted). Such "immunity gives government officials

breathing room to make reasonable but mistaken judgments about open legal questions," and

when it is "properly applied, it protects 'all but the plainly incompetent or those who knowingly

violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475

U.S. 335, 341 (1986)).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step

---

[6]   It appears that the arguments put forth by defendants Blanco, Nylen, Antonelli and Ballesteros
regarding qualified immunity apply equally to the "Unknown Named BOP Administrative
Remedy Coordinator . . . at the DSCC in Grand Prairie, Texas," Am. Compl. ¶ 11, and
"Unknown Named BOP [G]ang [O]fficial . . . at the BOP Central Office in Washington, D.C.,"
*id*. ¶ 12. Thus, the Court concludes that qualified immunity protects those defendants also.

analysis for resolving qualified immunity claims by government officials.  First, the Court

decides "whether the facts that a plaintiff has alleged or shown make out a violation of a

constitutional right."  *Id.* at 201.  If a plaintiff satisfies this first step, the Court then decides

whether the right at issue was clearly established at the time of defendants' alleged misconduct.

*Id.*  The sequence of this analysis is not mandatory, however, and the Court may "exercise [its]

sound discretion in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the particular case at hand."  *Pearson v.*

*Callahan*, 555 U.S. 223, 236 (2009).  "[W]hether a § 1983 defendant's conduct violates the

'clearly established' constitutional rights of the plaintiff is a pure question of law that must be

resolved by the [C]ourt."  *Pitt v. District of Columbia*, 491 F.3d 494, 509 (D.C. Cir. 2007).

Here, plaintiff raises a due process claim, and to do so, he first "must identify the denial

of a liberty interest."  *James v. Reno*, 39 F. Supp. 2d 37, 40 (D.D.C. 1999) (citing *Sandin v.*

*Conner*, 515 U.S. 472 (1995)), *aff'd*, No. 99-5081, 1999 WL 615084 (D.C. Cir. July 2, 1999)

(per curiam).  Plaintiff asserts two liberty interests, and the Court addresses each in turn.

### 1. Gang Validation

Plaintiff asserts "a liberty interrest [sic] in avoiding gang validation[]," Pl.'s Opp'n at 23,

and "an interrest [sic] in avoiding the collateral consequences that flow from gang validation,"

*id*. at 40.  Once validated, plaintiff states, inmates' "movements are tracked by officials, conduct

is monitored and they are automatically branded a threat to prison safety, subjected to specialized

treatment among inmates by virtue of the validation, thus also making the validated inmate a

target for enemies of that gang."  *Id*. at 40-41.

Defendants posit that "[p]laintiff's entire suit boils down to his dissatisfaction with being

classified as an Aryan Brother."  Defs.' Mem. at 18.  They argue he has no "clearly established

right—whether by statute or under the Constitution— to be shielded from classification as an Aryan Brother, even assuming the classification was based upon false or inaccurate information." *Id*. at 19.  There is support for their position, as "it has been held repeatedly that prisoners have no constitutional right to any specific classification." *Isler v. Grondolsky*, 942 F. Supp. 2d 170, 175 (D. Mass. 2013); *see Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (noting that federal prisoners have "no legitimate statutory or constitutional entitlement sufficient to invoke due process" with respect to "prisoner classification and eligibility for rehabilitative programs in the federal system"); *Butler v. S. Porter*, 999 F.3d 287, 296 (5th Cir. 2021) (quoting *Moody v. Baker*, 857 F.2d 256, 257–58 (5th Cir. 1988) (per curiam)) ("As a general rule, '[a]n inmate has neither a protectible property nor liberty interest in his custody classification.'"), *cert. denied sub nom. Butler v. Porter*, 142 S. Ct. 766 (2022), *reh'g denied*, 142 S. Ct. 1224 (2022); *Fields v. Fed. Bureau of Prisons*, No. 3:15cv-575, 2015 WL 2089741, at *4 (M.D. Pa. May 4, 2015) (concluding that prisoner plaintiff "simply has no due process interest in a certain custodial classification which can be pursued in a civil rights action"); *Young v. May*, No. 13-cv-0091-WS-M, 2013 WL 3875261, at *2 (S.D. Ala. July 25, 2013) (concluding that classifying plaintiff "as a convicted federal prisoner during his pretrial detention period . . . without more, is not a Fifth Amendment violation"); *United States v. Jones*, 869 F. Supp. 2d 373, 377 (E.D.N.Y. 2012) ("Courts have long recognized that the classification and designation of inmates is a matter within BOP's sole discretion."); *Gigger v. Corr. Corp. of Am.*, 750 F. Supp. 2d 99, 101 (D.D.C. 2010) ("A prisoner has no constitutionally protected interest in his place of confinement or security classification.").

Plaintiff treats "gang validation" as a matter separate from ADX placement or "classification" for any other purpose, claiming to have been "wrongfully . . . validated a gang

member without any procedural due process." Am. Compl. ¶ 89. Singling out gang validation, however, offers no relief. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (rejecting argument that prisoner's designation as Security Threat Group member because of gang affiliation violated due process); *Martinez v. Johnson*, 103 F. App'x 531, 532 (5th Cir. 2004) (per curiam) (rejecting prisoner's assertion of "a constitutionally protected liberty interest in not being classified as a gang member" because a "a prisoner does not have a constitutionally protected liberty interest in his classification or in remaining free from administrative segregation"); *Kuykendall v. Texas Dep't of Crim. Justice Exec. Dir.*, 78 F. App'x 928, 929 (5th Cir. 2003) (per curiam) (concluding plaintiff "does not have a liberty interest in his classification as a gang member or in his nonplacement in administrative segregation"); *Luken v. Scott*, 71 F.3d 192, 192–93 (5th Cir. 1995) (per curiam) (prisoner claiming that official "willfully maintained false information in [his] prison file concerning [his] membership in . . . the Aryan Brotherhood" causing his "confin[ement] in administrative segregation" did not demonstrate "a constitutionally cognizable liberty interest in his custody status"); *see also Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980) (concluding, "albeit reluctantly, that a prisoner's interest in avoiding [Central Monitoring Case] classification does not entitle him to due process protections").

Even if there were a liberty interest in gang validation, plaintiff fails to allege that Blanco, Nylen, Antonelli and Ballesteros were responsible for that determination. Rather, plaintiff blames an "unknown named BOP official, located at the BOP Central Office," as the official who "wrongfully validate[d plaintiff] as a gang member without any procedural due process[.]" Am. Compl. ¶ 45. At most, Nylen delivered the bad news and Blanco, acting on the instructions of his superior at BOP Central Office, *see* Am. Compl. ¶ 28, allegedly supplied information which, in turn, may have influenced the determination of that "unknown . . . BOP

official . . . at BOP Central Office," *id.* ¶ 45.  Neither Antonelli nor Ballesteros made the gang validation decision, and only became involved much later in the process: Antonelli through the Administrative Remedy Program, and Ballesteros after ADX placement had been proposed. Consequently, these defendants could not have been liable for violating plaintiff's Fifth Amendment rights when the gang validation giving rise to the claim was not their action.

### 2. Designation to ADX

Plaintiff asserts a protected liberty interest in his designation, or avoiding designation, to ADX, *see* Am. Compl. ¶ 89; Pl.'s Opp'n at 25, which allegedly happened "without as much procedural due process as [he] should have had," Am. Compl. ¶ 89.  But plaintiff did receive notice of the proposed ADX placement and of a hearing on the matter, and plaintiff attended the hearing.  That BOP officials erred in the handling of his post-placement grievance does not deprive him of due process with respect to the underlying subject matter of the grievance – placement at ADX following an SIS investigation which determined plaintiff is a member of the Aryan Brotherhood who "possessed direct knowledge of a planned assault, and assisted in the facilitation of a potential agency wide race war."  Am. Compl., Ex. C (ECF No. 24-1 at 27).

At any rate, the law is clear that a prisoner has no protected interest in his place of incarceration.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (holding prisoner has no constitutionally protected interest in the place of his confinement); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding that prisoner's liberty interest not implicated by transfer from medium to maximum security institution); *Woods v. Hawk-Sawyer*, No. 1:20-cv-1152 (TFH), 2020 WL 6146876, at *3 (D.D.C. Oct. 20, 2020) ("Prisoners have no liberty interest in their place of incarceration."); *Akers v. Watts*, 740 F. Supp. 2d 83, 94 (D.D.C. 2010) (concluding that plaintiff who claimed to have been "classified as a terrorist and assigned to the ADX 'supermax' facility

without due process . . . do[es] not overcome case law holding that a prisoner has no constitutionally protected interest in his place of confinement or security classification"); *Miller v. Fed. Bureau of Prisons*, 703 F. Supp. 2d 8, 16–17 (D.D.C. 2010) (denying due process claim "because it is settled law that a prisoner does not have a liberty interest in his place of confinement or custody classification that can be redressed by the due process clause of the constitution); *Perez v. Lappin*, 672 F. Supp. 2d 35, 42 (D.D.C. 2009) (citing cases); *Rodriguez v. Karge*, No. 1:08-cv-0332-GSA PC, 2009 WL 10700918, at *3 (E.D. Cal. Feb. 24, 2009) (denying due process claim absent "a liberty interest in remaining free from transfer to ADX-Florence"), *aff'd*, 399 F. App'x 221 (9th Cir. 2010); *Perry v. Bureau of Prisons*, No. 03-cv-1583 HHK, 2004 WL 5348502, at *3 (D.D.C. Aug. 11, 2004) (noting that BOP's "discretion to transfer prisoners is unfettered"); *see also Rodriguez v. Ratledge*, 715 F. App'x 261, 266 n.3 (4th Cir. 2017) (per curiam) (construing claim arising from prisoner's transfer to ADX as *Bivens* claim for damages and concluding claim would fail because "[i]nmates do not have a liberty interest in avoiding transfer . . . unless the transfer would impose an atypical and significant hardship compared to the general prison population, . . . [, and] conditions at ADX Florence do not constitute an atypical and significant hardship"); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("Community correctional centers are low security institutions but still prisons, and inmates have no more claim to be sent there than they have to avoid commitment to maximum-security penitentiaries.").

Plaintiff acknowledges "that the Constitution does not guarantee that a prisoner will be placed in a particular prison," Pl.'s Opp'n at 46, and that transfer from one institution to another "does not require a hearing," *id*. at 47. In essence, plaintiff admits defeat on his assertion of a right to avoid designation to ADX, and therefore he cannot show Blanco, Nylen, Ballesteros and

Antonelli violated a clearly established Fifth Amendment right.  Consequently, these defendants are protected by qualified immunity.  *See McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1249 (D. Colo. 2011) (concluding defendants were entitled to qualified immunity because "Plaintiff fails to state a plausible claim that his confinement at ADX interferes with a liberty interest or that he was deprived of a sufficient level of procedural due process").[7]

### D. BOP Directors and *Respondeat Superior* Liability

Plaintiff alleges that the current and former BOP Directors are "legally responsible for the overall operation of the BOP," Am. Compl. ¶ 8; *see id.* ¶¶ 9-10, including the institutions to which plaintiff has been designated, DSCC and the agency's Central Office, *see id.* ¶¶ 8-10, 86-87.  According to plaintiff, even though the Directors "have the power and ability to correct" the wrongs he has suffered, they "have shown no interest [sic] to do so," *id.* ¶ 81, and instead have "shown quite the opposite by their neglect and willful ignorance," *id.*  The individual "[d]efendants are subordinates of the BOP Director, and each [subordinate] played a specific role in Plaintiff Jolley's deprivations and hardships that are spelled out in this complaint."  *Id.* ¶ 88.  Thus, plaintiff attempts to hold the Directors liable for their acts.  Defendants argue that, absent allegations that these defendants personally were involved in the events giving rise to the

---

[7]  Plaintiff appears to assert a third liberty interest in the information, and the accuracy of information, placed in his prison records.  Because there is no liberty interest either with respect to gang validation or ADX placement, plaintiff does not establish a liberty interest in information or decisions on which gang validation and ADX placement are based.  *Cf. Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) ("It is therefore axiomatic that because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds."); *Freeman v. Rideout*, 808 F.2d 949, 955 (2d Cir. 1986) ("[I]t is the holding of this Court that [prison official's] filing of unfounded charges did not constitute a violation of plaintiff's rights under 42 U.S.C. § 1983[.]"), *cert. denied*, 485 U.S. 982 (1988).

complaint, they cannot be held liable under *Bivens* for the acts of their subordinates.  *See* Reply at 13-15.

Although "*Bivens* establishes a cause of action for damages against a federal employee in his or her individual capacity for constitutional violations, . . . such liability extends only to officials who *themselves* acted unconstitutionally."  *Dial v. Kane*, 315 F. Supp. 3d 556, 559 (D.D.C. 2018) (citations and internal quotation marks omitted) (emphasis in original); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  It is well settled that "*Bivens* claims cannot rest merely on respondeat superior."  *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (citation omitted).

Aside from a vague allegation that he "requested relief at every level including the BOP Directors," Am. Compl. ¶ 9, plaintiff does not allege that any BOP Director, past or present, was involved personally in validating plaintiff's membership in the Aryan Brotherhood or designating him to ADX.  Absent such allegations, his *Bivens* claim against the Directors fails.[8] *See Embrey v. United States*, No. 1:21-cv-0235 (CJN), 2022 WL 392312, at *5 (D.D.C. Feb. 9, 2022) (concluding that BOP Director, who was not alleged to have "calculated or was otherwise involved in calculating [plaintiff's] sentence computation," could not be held liable for holding plaintiff past proper release date under *respondeat superior* theory); *Dial*, 315 F. Supp. 3d at 559

---

[8]  Similarly, plaintiff's claim that Warden Antonelli is liable for the "bad acts" of Dr. Ballesteros, Am. Compl. ¶ 65, fails.  Critical to a *Bivens* claim is an allegation "that the defendant federal official was personally involved in the illegal conduct," *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997), and plaintiff does not allege that Antonelli was involved directly with the pre-placement mental health evaluation Dr. Ballesteros conducted.

(finding that, "under *Bivens*, a federal official may not be held liable simply because he is in a position of authority over the alleged individual offender"); *Lyles v. U.S. Marshals Serv.*, 301 F. Supp. 3d 32, 40 (D.D.C. 2018) (finding that United States Marshal "only can be found liable for his own actions, not the unconstitutional acts of a subordinate under a theory of *respondeat superior*"), *aff'd sub nom. Lyles v. Hughes*, No. 18-5106, 2019 WL 1244575 (D.C. Cir. Mar. 1, 2019) (per curiam); *Akers*, 740 F. Supp. 2d at 93 (concluding that defendants' "supervisory roles do not render them personally liable for the alleged wrongful acts of the other BOP employees"); *Johnson v. United States*, 642 F. Supp. 2d 1, 5 (D.D.C. 2009) (dismissing a *Bivens* claim against BOP's Director "based solely on his position as the agency head and his perceived responsibility for the actions of all of his subordinates").

## V. CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

### A. Sovereign Immunity and Claim for Monetary Damages

Insofar as plaintiff sues the defendants in their official capacities, the claims are treated as if plaintiff brought them against the United States directly.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  And the claims for monetary damages against the United States must fail. "[T]he United States may not be sued without its consent," *United States v. Mitchell*, 463 U.S. 206, 212 (1983), and the United States has not consented to being sued for constitutional claims, *see FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *Mitchell v. Spencer*, No. 21-cv-01842-LTB-GPG, 2022 WL 22354513, at *7 (D. Colo. Mar. 25, 2022) (concluding "Constitutional claims asserted against the Defendants in their official capacities for monetary relief are barred by sovereign immunity") (citing *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002)); *Miller*, 703 F. Supp. 2d at 16 (dismissing "Constitution-based claims of retaliation" noting that "as an agent of the sovereign, the BOP is not liable for damages on any constitutional claim").

### B. First Amendment Retaliation Claim

"To state a First Amendment claim for retaliation a prisoner must allege: (1) the type of activity he engaged in was protected under the First Amendment; (2) the state impermissibly infringed on his right to engage in the protected activity; and (3) the retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Pryor-El v. Kelly*, 892 F. Supp. 261, 274 (D.D.C. 1995) (citation and internal quotation marks omitted); *see McIntosh v. Lappin*, No. 11-cv-01150-PAB-CBS, 2012 WL 4442766, at *23 (D. Colo. Aug. 13, 2012) ("[T]o properly assert a First Amendment claim for retaliation, the inmate must allege three elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected activity") (citations omitted), *report and recommendation adopted in part*, No. 11-cv-01150-PAB-CBS, 2012 WL 4442760 (D. Colo. Sept. 26, 2012).  And "[a] plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial factor' or 'motivating factor' in the defendant's decision." *Pryor-El*, 892 F. Supp. at 274 (quoting *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).  To this end, a plaintiff "must . . . allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights," *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990), as "[m]ere allegations of constitutional retaliation will not suffice," *id*.

Here, plaintiff asserts, without alleging facts in support, that defendants retaliated against him for having spoken to the lawyer representing the person accused of murder involving the

Aryan Brotherhood.  *See* Am. Compl. ¶ 22.  For purposes of this Memorandum Opinion, the Court presumes without deciding that plaintiff had a protected right to do so.  That an investigation regarding plaintiff's gang membership began shortly after meeting with the lawyer does not state plausibly that the meeting and the investigation are connected, or that the meeting was a substantial or motivating factor for the investigation.  There are no allegations that the March 23, 2017, meeting itself caused plaintiff an injury, and plaintiff was not validated as a member of the Aryan Brotherhood for another two years.  Nor does plaintiff allege that placement of the photograph of the cup bearing gang symbols in his records in 2017 or 2018 caused any injury, as no disciplinary action was taken against plaintiff at that time.

It may be plaintiff's personal belief that Blanco acted with "evil intent," Am. Compl. ¶ 29, and "appl[ied] his thumb to the scale," Pl.'s Opp'n at 19, by entering "maliciously falsified" information into plaintiff's prison records, *id.*, but plaintiff's personal belief alone does not state a claim, *see Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("The inmate must allege more than his personal belief that he is the victim of retaliation.").

Importantly, plaintiff does not state plausibly that defendants' investigation into an inmate's possible membership in a gang does not advance a legitimate penological objective.  Plaintiff may not have been "displaying . . . disruptive behaviors, or causing any institutional disorder," Pl.'s Opp'n at 21, but plaintiff's assessment of his own conduct only goes so far.  BOP cannot be faulted for investigating whether an inmate in its custody is a gang member.  *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (finding Michigan Department of Corrections' "policy directive regarding the classification of inmates as STG members is rationally related to the legitimate state interest of maintaining order in the prison.").  As defendants note, *see* Defs.' Reply at 10-11, plaintiff not only was a validated member of the

Aryan Brotherhood, but also was found to have participated in the planning of an agency-wide race war.

### C.  Fifth Amendment Due Process Claims

Plaintiff's due process claims fail, as discussed above, because plaintiff fails to establish a liberty interest with respect to gang validation and his designation to ADX.

### D.  Eighth Amendment Cruel and Unusual Punishment Claim

"The Eighth Amendment bars the infliction of '"cruel and unusual punishments."'" *Chandler v. District of Columbia Dep't of Corr.*, 145 F.3d 1355, 1360 (D.C. Cir. 1998) (quoting U.S. Const. amend. VIII).  It "prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, . . . or are grossly disproportionate to the severity of the crime[.]"  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations omitted). "But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional," and "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Id.* at 347.

Here, plaintiff's claim pertains to the conditions of his confinement at ADX.  While the restrictions inherent in designation to ADX are unpleasant for plaintiff, none is a departure from what a prisoner could expect after having been convicted, sentenced and incarcerated.  *See Rezaq v. Nalley*, 677 F.3d 1001, 1015 (10th Cir. 2012) ("The conditions at ADX . . . do not, in and of themselves, give rise to a liberty interest because they are substantially similar to conditions experienced in any solitary confinement setting."); *see also Robinson v. Norwood*, 535 F. App'x 81, 83 (3d Cir. 2013) ("Transfers from lesser to more restrictive units in a prison generally do not implicate a protected liberty interest because some incursions on liberty are to be expected within a prison.") (citing *Sandin*, 515 U.S. at 485, and *Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002));

*Harbin-Bey*, 420 F.3d at 577.

## VI. CONCLUSION

The Court concludes that: (1) amendment of the complaint is warranted; (2) it lacks personal jurisdiction over defendants Blanco, Nylen, Antonelli, Ballesteros and the "Unknown Named BOP Administrative Remedy Coordinator . . . at the DSCC in Grand Prairie, Texas;" (3) qualified immunity bars plaintiff's Fifth Amendment claims against all defendants sued in their individual capacities; (4) sovereign immunity bars plaintiff's claims for money damages against the United States; and (5) plaintiff's First, Fifth and Eighth Amendment claims fail. Accordingly, the Court GRANTS plaintiff's motion to amend his complaint, GRANTS defendants' motion to dismiss, and DENIES as moot plaintiff's motions for discovery hearing. An Order is issued separately.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

DATE: March 22, 2024